UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHAEL S.,[1]

                                        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.

_____

**DECISION AND ORDER**


1:19-cv-01479–JJM


 

 

        Plaintiff brings this action pursuant to 42 U.S.C. §405(g) to review the final

determination of defendant Commissioner of Social Security that he was not entitled to

Supplemental Security Income ("SSI").  Before the court are the parties' cross-motions for

judgment on the pleadings [8, 10].[2]  The parties have consented to my jurisdiction [12].  Having

reviewed their submissions [8, 10, 11], this action is remanded to the Commissioner for further

proceedings consistent with this Decision and Order.


## BACKGROUND

        The parties' familiarity with the 380-page administrative record [6] is presumed.

Plaintiff filed an application for SSI on December 9, 2015. Administrative Record [6], p. 37.[3]

---

[1]        In accordance with the guidance from the Committee on Court Administration and Case
Management of the Judicial Conference of the United States, which was adopted by the Western District
of New York on November 18, 2020 in order to better protect personal and medical information of non-
governmental parties, this Decision and Order will identify the plaintiff by first name and last initial.

[2]        Bracketed references are to the CM/ECF docket entries. Unless otherwise noted, page references
are to CM/ECF pagination (upper right corner of the page).

[3]        Page references to the Administrative Record refer to the page numbers reflected in the
Administrative Record itself (bottom right corner of the page).

On the date of his application, plaintiff was 53 years old. Id., p. 76.  He alleged various impairments, including back spasms, dizziness, foot problems, mobility problems, gout, diabetes, asthma, blurred vision, shortness of breath, sleep apnea, joint pain, high blood pressure, extreme depression, herpes simplex, and allergic rhinitis. Id., pp. 76-77.  Plaintiff alleged that he has been unable to work since his application date. Id., p. 59.

Plaintiff's claim was initially denied on April 4, 2016. Id., p. 37. Administrative Law Judge ("ALJ") Hortensia Haaversen conducted a video hearing on June 18, 2018. Id. Plaintiff appeared with his attorney. Id.  ALJ Haaversen heard testimony from the plaintiff and vocational expert Sharon D. Ringenberg. Id.  On September 24, 2018, ALJ Haaversen issued a Notice of Decision denying plaintiff's claim. Id., pp. 34-51.

## A.  Relevant Medical Evidence in the Record

### 1.  Treating Physician Howard E. Sperry, M.D.

The administrative record contains records from Dr. Sperry dating back to September 29, 2014. Id., p. 324.  Dr. Sperry recorded the following ailments/complaints: allergic rhinitis, asthma, herpes simplex, hyperlipidemia, hypertension, "numerous" moles, thyromegaly, type 2 diabetes mellitus, low back pain, and depression. Id., pp. 312, 319, 324.

On December 15, 2015, diagnosed plaintiff with degenerative join disease, tendonitis, and/or gouty arthritis left great toe. Id., p. 310.  Two days later, Dr. Sperry signed a brief note stating that claimant was unable to sit or stand for long periods due to muscle spasms. Id., p. 333.

On January 6, 2016, Dr. Sperry examined plaintiff again (id., pp. 300-05) and completed a Medical Examination for Employability Assessment, Disability Screening, and

Alcoholism/Drug Addition Determination form. Id., p. 331-32.  At that time, plaintiff

complained of depression, back spasms, mood swings, and left foot pain. Id., p. 300.  Obstructive

sleep apnea was added to plaintiff's list of Active Problems, and CPAP equipment was

prescribed. Id., pp. 300, 302.  Dr. Sperry assessed plaintiff as "[m]oderately limited" with respect

to walking, standing, lifting, carrying, pushing, pulling, bending, and stair climbing. Id., p. 332.

He noted no physical limitations with plaintiff's sitting, seeing, hearing, speaking, or use of

hands. Id.

Dr. Sperry also found no mental limitations with regard to understanding,

remembering, and carrying out instructions; interacting appropriately with others; maintaining

socially appropriate behavior; and maintaining basic standards of personal hygiene and

grooming. Id.  Dr. Sperry assessed moderate limitations with attention, concentration, and

making simple decisions. Id.  Dr. Sperry opined that plaintiff would currently have "great

difficulty" maintaining a full-time work schedule, but that, with treatment, plaintiff should

improve and might be able to resume work. Id.

### 2.  Consultative Examiner John Schwab, D.O.

On March 11, 2016, Dr. Schwab performed a physical consultative examination

of plaintiff.  Id. p. 339.  Dr. Schwab found plaintiff to have a normal gait without a cane. Id., p.

340.  Plaintiff could walk on his heels and toes, squat normally, and he had a normal stance. Id.

He needed no help changing for the examination or getting on and off the examination table, and

he rose from a chair without difficulty. Id.  Dr. Schwab opined that plaintiff's use of a cane was

unnecessary. Id.  Plaintiff had full lumbar lateral flexion and rotary movement, reduced

extension and flexion, negative straight leg raising, full upper extremity ranges of motion, and

full hip, knee, and ankle ranges of motion. Id., p. 341.  He had stable and nontender joints and no

redness, neat, swelling, or effusion. Id.  He had normal deep tendon reflexes, no sensory deficits, and normal upper and lower extremity strength. Id.  Plaintiff had no extremity edema, no muscle atrophy, intact hand and finger dexterity, and normal grip strength. Id.  Lumbosacral spine x-ray showed no significant bony abnormality. Id.  Dr. Schwab stated that plaintiff should avoid respiratory irritants, but otherwise had no functional restrictions. Id., p. 342.

### 3.  Consultative Examiner Janine Ippolito, Psy D.

Dr. Ippolito performed a psychological consultative examination on plaintiff on March 11, 2016. Id., p. 334-38.  She assessed plaintiff as cooperative with an adequate manner of relating, adequate social skills, appropriate eye contact, normal motor behavior, and fluent speech. Id., p. 336.  Plaintiff was appropriately groomed and displayed coherent and goal directed thought processes, full range of affect, euthymic mood, and clear sensorium. Id., pp. 336-37.  Plaintiff had intact attention and concentration, with mildly impaired memory due to some distractibility, average-to-below-average intellectual functioning, and fair insight and judgment. Id., p. 336.  He told Dr. Ippolito that he could not cook, clean, do laundry, or go grocery shopping due to difficulty standing, dizziness, and forgetfulness. Id., p. 337.  Plaintiff stated that he could drive and use public transportation, and he spent his days watching television, listening to music, and playing video games. Id.

Dr. Ippolito opined that plaintiff could follow and understand simple directions and instructions; perform simple tasks independently; maintain attention and concentration; maintain a regular schedule; learn new tasks; perform complex tasks independently; and make appropriate decisions with no evidence of limitations. Id.  Dr. Ippolito opined that plaintiff could relate adequately to others and appropriately deal with stress with moderate limitations due to "emotional distress". Id.  She diagnosed plaintiff with moderate recurrent major depressive

disorder, social anxiety disorder with panic attacks, and polysubstance abuse (though that was reportedly in full remission). Id.

### 4. Treating Physician Armit Singh, M.D.

Dr. Singh's treatment records date back to September 19, 2017. Id., pp. 361-63. Dr. Singh noted plaintiff had "extremely unsteady . . .  ambulation" and could not stand or walk on his heels and toes. Id., p. 362.  His lumbar spine range of motion was restricted in all directions with marked limitation of extension. Id.  Dr. Singh noted osteoarthritis in plaintiff's feet and decreased light touch and pinprick sensation, but intact position and vibration sensation. Id.  He noted osteoarthritic changes in plaintiff's knees and diffuse weakness in both of his legs. Id.  Plaintiff would "give[] way" due to pain on resisted motor power testing. Id.  Plaintiff's straight leg raise was 60 degrees bilaterally, but with pain in lower back. Id.  Plaintiff showed osteoarthritic changes in the small joints of his hands, and had weakened grip strength. Id. Plaintiff had "mildly restricted" cervical spine range of motion. Id.

On February 28, 2018, an October 2017 EMG study showed peripheral polyneuropathy; lumbar spine x-rays showed no fracture or dislocation; hip x-rays showed degenerative spurring and mild sclerosis; and knee x-rays showed minimal degenerative changes. Id., p. 396.

Dr. Singh provided a medical source statement dated May 7, 2018. Id., p. 373. Dr. Singh opined that plaintiff could occasionally lift and/or carry no more than five pounds and could sit, walk, and stand for a very limited amount of time during an eight-hour workday. Id., pp. 373, 375.  Plaintiff could not operate foot controls, but he could occasionally drive a motor vehicle. Id., p. 374.  He could not perform postural activities or be exposed to environmental hazards, and he required a walker to ambulate. Id., pp. 374-75.  Plaintiff could not reach

overhead, push, or pull, but he could occasionally reach in other directions, handle, finger, and feel. Id., p. 375.  Dr. Singh estimated that Plaintiff would be off task 80-90% of each workday and he would miss 3-4 days of work per month. Id., p. 376.

### B.  Testimonial Evidence

#### 1.  Plaintiff's Function Report

In plaintiff's self-authored function report, dated February 19, 2016, he stated that although he prepared sandwiches and TV dinners for himself, he could not cook. Id.  p. 228.  He could clean and do laundry, but did not perform outside work because he could not stand or sit for too long. Id., pp. 228-29.  He could drive and go out alone. Id., p. 229.  He shopped for food once every two weeks, read, and watched television all the time. Id., pp. 229-30.  He went out to eat sparingly, attended church every Sunday, and went to his daughter's house frequently. Id., p. 230.

Plaintiff stated he used a cane when walking long distances or on rough ground. Id., p. 232.  Some days he could walk one block before stopping to rest and other days he could walk further. Id., p. 232.  Plaintiff stated that he had no problems with attention, and he could finish what he started. Id., p. 232.  He could follow spoken and written instructions and had no problems getting along with people in authority. Id., p. 233.  He took ibuprofen, used a cane, and applied heat for pain. Id., pp. 234-35.

#### 2.  Plaintiff's Testimony

At the administrative hearing, plaintiff testified that he had nerve damage resulting in mobility issues and difficulty standing, sitting, and walking.  Id., p. 61.  Plaintiff testified that he started using a cane based on a doctor's recommendation. Id., p. 63.  He stated

that the doctor gave him a walker, but he only used it on occasions where he would be standing because he could sit on it. Id., p. 63.  He used a cane for "in and out" trips. Id., p. 63.

Plaintiff testified that he had an unrestricted driver's license. Id., p. 64. He recently flew to California to with his daughter. Id., p. 65.  He had not had any hobbies "[i]n years, decades". Id., p. 66.  He had not attended church in a year. Id., pp. 66-67.  He did not do household chores or grocery shopping, and they would pay someone to shovel snow and rake leaves. Id., p. 67.  He could and would, however, heat food in a microwave, shop in stores for small items, and watch television. Id., p. 68.

### C. ALJ Haaversen's Decision

On September 24, 2018, ALJ Haaversen issued her Decision, concluding that plaintiff was not disabled. Id., pp. 37-51.  ALJ Haaversen analyzed the evidence using the well settled five-step evaluation process.  Id., pp. 38-39, *citing* 20 C.F.R. §§404.1520, 416.920.  She determined that plaintiff had the following "severe impairments": osteoarthritis of the knees, disorder of the lumbar spine, diabetes mellitus with peripheral neuropathy, hypertension, major depressive disorder, and social anxiety. Id., *citing* 20 C.F.R §416.920(c). She found plaintiff's asthma to be a "nonsevere impairment". Id.  Nonetheless, she included a limitation with respect to respiratory irritants in formulating plaintiff's residual functional capacity ("RFC"). Id., p. 40. With respect to mental impairments, ALJ Haaversen found that plaintiff had only "moderate limitation[s]" in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing himself. Id., p. 41-42.

After assigning "little weight" to the functional assessments of Drs. Sperry, Schwab, and Singh, and "great weight" to Dr. Ippolito's mental functional assessment, ALJ Haaversen found that plaintiff had the RFC to perform "medium work" as defined in 20 C.F.R.

416.967(c), subject to certain limitations. Id., pp. 42-49.   She concluded that plaintiff could lift 25 pounds frequently, and up to 50 pounds occasionally; stand or walk for up to six hours out of an eight-hour workday as well as sit up for six out of eight hours; follow and understand simple directions and instructions; perform simple tasks independently; maintain attention and concentration; maintain a regular schedule; learn new tasks; perform complex tasks dependently; make appropriate decisions; relate adequately to others and deal with stress appropriately. Id. However, she found that plaintiff "must avoid concentrated exposure to respiratory irritants" and recommended that plaintiff have a "low stress-job . . .  involving no more than occasional decision-making". Id.  Based on the vocational expert's testimony, ALJ Havversen found that plaintiff could perform jobs in the national economy such as patient escort (DOT # 355.677-014) and dining room attendant (DOT #311.677-018). Id., pp. 50, 70-71.

### D.  The Appeals Council's Determination

Plaintiff requested review of ALJ Haaversen's Decision. Id., pp. 196-197. Plaintiff submitted, as additional evidence, an application for discharge of his federal student loans for "total and permanent disability". Id., p. 9-10.  This application included a certification dated February 20, 2019 by Dr. Singh stating that plaintiff had "severe" permeant impairments including "osteoarthritis, diabetic peripheral neuropathy, lumbar radiculopathy, neurogenic claudication, and impaired gait" that necessitated the use of a "4 wheeled walker" among other limitations. Id., p. 10.  Plaintiff also submitted a mental health treatment plan dated January 29, 2019. Id. at 15-17.  On September 4, 2019, the Appeals Council "found no reason under our rules to review the Administrative Law Judge's decision" and denied plaintiff's request for review. Id., pp. 1-3.

## ANALYSIS

### A.  Standard of Review

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error."  Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. § 405(g)).  Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion".  Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938).  An adjudicator determining a claim for DIB and/or SSI employs a five-step sequential process.  Shaw, 221 F.3d at 132; 20 C.F.R. §§ 404.1520, 416.920.  The plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five. *See* Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

With respect to his physical limitations, plaintiff argues that the ALJ failed to properly apply the treating physician rule to the opinions of Dr. Sperry and Dr. Singh in assigning them little weight; that she failed to properly address Dr. Singh's opinion that plaintiff required the use of a walker or cane; and that, having given little weight to all of the physical medical opinions in the record, she improperly relied on her own lay interpretation of the medical data. Plaintiff's Memorandum of Law [8-1], pp. 12-23.  With respect to his mental limitations, plaintiff argues that the ALJ failed to reconcile her RFC with Dr. Ippolito's opinion that plaintiff had moderate limitations in relating adequately to others, which would have rendered the indicated vocations inappropriate. Id., pp. 23-26.  Finally, he argues that the Appeals Council improperly rejected a treating source medical opinion in summarily rejecting the February 2019 discharge application. Id., pp. 26-30.

The Commissioner responds that the ALJ properly weighed the medical opinion evidence, resolved the inconsistencies, and determined an RFC based on all the relevant evidence in the record. Commissioner's Brief [10-1], pp. 14-20.  The Commissioner argues that the ALJ properly found the more limiting aspects of Dr. Sperry and Dr. Singh's opinion, including his apparent need for a walker or cane, inconsistent with more recent medical evidence and plaintiff's own self-reporting. Id., pp. 15-19.  The Commissioner further argues that, contrary to plaintiff's contention, Dr. Ippolito opined that he could adequately relate to others. Id., pp. 19-20.  Finally, the Commissioner argues that the new submission to the Appeals Council was not material such that it was required to consider it.  Id., pp. 20-21.

I agree with plaintiff that the ALJ failed to properly evaluate the treating physicians' opinions with respect to plaintiff's physical limitations, and that her effective rejection of all the medical evidence as to plaintiff's physical residual functionality left her RFC determination unsupported by substantial evidence.  Accordingly, I remand this matter for further proceedings.

**B.  Did the ALJ Fail to Properly Evaluate the Physical and Mental Medical Opinion Evidence in Formulating the RFC?**

**1.  Treating Physicians Dr. Sperry and Dr. Singh**

The ALJ must give a treating physician's opinion "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record".  20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2); see Estrella v. Berryhill, 925 F.3d 90, 95 (2d Cir. 2019).[4]  Conversely, "the

---

[4]         "The Social Security Administration adopted regulations in March 2017 that effectively abolished the treating physician rule; however, it did so only for claims filed on or after March 27, 2017." Montes v.

opinions of a treating physician . . .  need not be given controlling weight where they are contradicted by other substantial evidence in the record." Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002); *see also* Monroe v. Commissioner of Social Security, 676 F. App'x 5, 7 (2d Cir. 2017) (summary order).   Plaintiff does not specifically dispute that the ALJ made this initial finding here with respect to either Dr. Sperry or Dr. Singh's opinion.

Nevertheless, if an ALJ decides the treating physician's opinion is not entitled to controlling weight, she must then determine "how much weight, if any, to give it". Id.  "In doing so, [the ALJ] must 'explicitly consider' the following, nonexclusive 'Burgess factors': '(1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." Id., pp. 95-96 (*citing* Burgess v. Astrue, 537 F.3d 117, 119 (2d Cir. 2008)).  An ALJ's failure to explicitly apply the Burgess factors is "procedural error". Id., p. 96.

Although the Commissioner concedes that the ALJ did not explicitly consider these factors ([10-1], p. 14), he argues that affirmance is still proper when the ALJ has "provided 'good reasons' for its weight assignment" or if "a searching review of the record assures us that the substance of the treating physician rule was not traversed". Estrella, 925 F.3d at 96 (internal quotations omitted).

Here, the ALJ gave "little weight" to Dr. Sperry's assessment of plaintiff's physical limitations. [6], pp. 47-48.  Notably, she discounted Dr. Sperry's assessment of "moderate limitations in walking, standing, lifting, carrying, pushing, pulling, bending, and stair climbing" as "vague, conclusory, and internally inconsistent". Id., p. 47.  She found Dr. Sperry's

---

Commissioner of Social Security, 2019 WL 1258897, *2 n. 4. (S.D.N.Y. 2019).  This claim was filed prior to that date.

assessment of "only modest limitations of exertional and postural function" to be contradictory to his assertion that plaintiff would have great difficulty maintaining a full-time work schedule, and that such limitations were described with insufficiently specificity.  Id.

　　　　　This Court has held that "where an ALJ perceives inconsistencies in a treating physician's report, the ALJ bears an affirmative duty to seek out more information from the treating physician . . . for clarification of the reasoning of the opinion." Lyman v. Commissioner of Social Security, 2020 WL 1131226, *3 (W.D.N.Y. 2020) (citations omitted).  In response, the Commissioner cites Micheli v. Astrue, 501 Fed. App'x 26, 29 (2d Cir. 2012) (Summary Order). However, while Micheli holds that "[t]he mere fact that medical evidence is conflicting or internally inconsistent does not mean that an ALJ is required to re-contact a treating physician", that is true only "where the record [otherwise] provides sufficient evidence" to make the necessary determinations.  Id.  That is to say, "the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim" in a situation "where there are no obvious gaps in the administrative record". Rosa v. Callahan, 168 F.3d 72, 79 n. 5 (2d Cir. 1999).  As I will discuss further below, that is not the case here.  Therefore, it was error for the ALJ to discount Dr. Sperry's opinion solely on grounds of vagueness or internal inconsistency.  The ALJ should have recontacted Dr. Sperry for clarification. See id.

　　　　　The ALJ also gave Dr. Singh's opinion "little weight".  Id. p. 48.  In his medical source statement, Dr. Singh opined that plaintiff could only occasionally lift and/or carry five pounds or less and could sit, walk, and stand for a very limited amount of time during an eight-hour workday. Id., pp. 373, 375.  He also opined that plaintiff could not perform postural activities or be exposed to environmental hazards, and required a walker to ambulate. Id., pp. 374-75.  The ALJ found these opinions to be unsupported by other evidence in the record, and

inconsistent with plaintiff's self-reported activities of daily living, including driving, cleaning, laundry, and grocery shopping. Id. p. 48.  She also determined that plaintiff's ability to play video games contradicted Dr. Singh's opinion that plaintiff would not be off task for 80-90% of the workday.  Id.

These conclusions as to Dr. Singh's opinion by the ALJ seem dubious, as plaintiff's self-reported activities of daily living were actually quite modest, consisting of basic tasks such as preparing sandwiches and TV dinners for himself (id., p. 228), cleaning and doing laundry (id.), occasional grocery shopping (id., p. 229), driving (id.), and walking a block or so before requiring 20-30 minutes rest (id., 232).  Conversely, plaintiff reported that he could not stand or sit for too long (id., p. 229), perform outside work (id., p. 228), had difficulty standing, sitting, and walking (id., p. 61) and used a cane or walker for more strenuous outings (id., p. 63).  None of these admissions directly contradict Dr. Singh's opinion that plaintiff could only occasionally lift and/or carry five pounds or less and could sit, walk, and stand for only a very limited amount of time. See id., pp. 373, 375.  Much less do these statements support the ALJ's ultimate RFC determination that plaintiff could lift 25 pounds frequently, and up to 50 pounds occasionally; stand or walk for up to six hours out of an eight-hour workday as well as sit up for six out of eight hours. See id., p. 42.

In sum, I conclude that the ALJ has not provided "good reasons" for her assigning little weight to the treating physicians' opinions, and my review of the record does not assure me that the substance of the physician rule was not violated.

## 2.   Improper Lay Interpretation of Medical Evidence

Moreover, it does not appear that the physical components of the ALJ's RFC are supported by substantial evidence in the record, or at least the record as credited by the ALJ.  In formulating an RFC, "it is the ALJ's responsibility to choose between properly submitted medical opinions and other competent evidence to piece together an overall [RFC] assessment." Robles v. Colvin, 2016 WL 814926, *4 (N.D.N.Y. 2016) (internal quotes omitted).  Here, however, the ALJ effectively rejected all the medical opinions as to plaintiff's physical functional limitations: in addition to according little weight to the opinions of the treating physicians, she also gave little weight to the opposing opinion of the physical consultative examiner, Dr. Schwab, who stated that there were "no functional restrictions". Id., p. 47.

"While it is true that the RFC does not need to correspond exactly to an opinion, it does require that an opinion be given enough weight to rely on it for the determination of the RFC." Waldock v. Saul, 2020 WL 1080412, *3 (W.D.N.Y. 2020). "[T]he RFC assessment will be sufficient only when the record is clear and contains some useful assessment of the claimant's limitations from a medical source." Muhammad v. Colvin, 2017 WL 4837583, *4 (W.D.N.Y. 2017) (internal quotations omitted); see Murray v. Commissioner of Social Security, 2019 WL 4263336, *3 (W.D.N.Y. 2019); Johnson v. Commissioner of Social Security, 351 F. Supp. 3d 286, 294 (W.D.N.Y. 2018); Benman v. Commissioner of Social Security, 350 F. Supp. 3d 252, 259-60 (W.D.N.Y. 2018).

When an ALJ rejects all the evidence in the record concerning a plaintiff's functional mental or physical limitations, she creates an evidentiary gap in the record.  Guttierez v. Berryhill, 333 F.Supp.3d 267, 271 (W.D.N.Y. 2018). As a general rule, "[n]either the trial judge nor the ALJ is permitted to substitute his own expertise or view of the medical proof for

-14-

the treating physician's opinion."  Shaw, 221 F.3d at 134; see Burgess, 537 F.3d at 129.

Therefore, "[b]y failing to give controlling, or even substantial, weight to any of the treating

physicians, the ALJ's RFC determination is not based on a medical opinion[, and an] RFC

determination made without the benefit of a medical opinion is insufficient to support the finding

with substantial evidence". Marshall v. Berryhill, 2018 WL 6257430, *2 (W.D.N.Y. 2018).

        To be sure, not all the cases take such a hard-line approach with respect to the

absence of medical evidence.  Nonetheless, those cases permit the ALJ to support an RFC with

nonmedical evidence only "when there are only minor physical impairments, or when the record

is clear and there is a useful assessment of plaintiff's limitations". Keener v. Commissioner of

Social Security, 2020 WL 755377, *6 (W.D.N.Y. 2020); see Morse v. Commissioner of Social

Security, 2020 WL 2781702, *4-5 (W.D.N.Y. 2020) ("[a]lthough the RFC finding need not

correspond to a specific medical opinion, it must nevertheless be supported by substantial

evidence in the record"); Caraco v. Commissioner of Social Security, 2020 WL 415939, *4

(W.D.N.Y. 2020) ("this is not the kind of minor physical impairment that courts have found an

ALJ qualified to assess based on common sense").

        This is not the situation here.  After discounting all the relevant medial opinion

evidence, the ALJ relied heavily on plaintiff's vague and unquantified statements concerning his

physical abilities and crafted an RFC that falls somewhere in the middle of significant limitations

(as opined by Dr. Sperry and Dr. Singh) and non-existent limitations (as per Dr. Schwab).  This

attempt to proverbially "split the baby" between opposing medical opinions, at least without

some more substantial evidence as to residual functionality, is improper. See Mariani v. Colvin,

567 Fed. App'x. 8, 11 (2d Cir. 2014) (Summary Order) ("[m]edical evidence at both ends of the

spectrum . . .  is not substantial evidence for a finding that the extent of the disability is fifty

percent capacity").  Even taking plaintiff's statements at face value, his claimed ability to walk

short distances unassisted and perform the most basic of daily functions do not, without more,

provide clear or substantial support for the ALJ's conclusion that he was able to perform

"medium work", including lifting 25 to 50 pounds or standing and walking for 6 of 8 hours. On

the contrary, the bulk of the record, including the opinions of the only two physical treating

physicians, cuts the other way.  Accordingly, the matter is remanded for further development of

the record.


   **3.  Plaintiff's Use of Walker of Cane**

   As for the specific issue of plaintiff's use of an assistive device, I note that, unlike

the other aspects of plaintiff's physical functionality, the ALJ did rely on credited medical

opinion evidence in determining that such device was not necessary. *See* id., p. 47.  Nonetheless,

in light of my findings above, that determination should also be revisited on remand and

reconciled with the properly weighted opinions of the treating physicians.


   **4.  Mental Limitation/Relating to Others**

   Plaintiff further argues that the ALJ failed to reconcile her RFC with Dr.

Ippolito's opinion that plaintiff had moderate limitations in relating adequately to others, which

would have rendered the indicated vocations inappropriate. [8-1], pp. 23-26.  The Commissioner

responds that, contrary to plaintiff's contention, Dr. Ippolito opined that he could adequately

relate to others. [10-1], pp. 18-19.

   The ALJ gave "great weight" to Dr. Ippolito's opinion regarding plaintiff's

mental functionality, as it was the only specialized mental health evidence of record. [6], pp. 48-

49.  However, the parties disagree as to whether the ALJ interpreted Dr. Ippolito's opinion

correctly.  At issue is Dr. Ippolito's statement that "[plaintiff] can relate adequately to other and appropriately deal with stress with moderate limitations". Id., p. 337.  Plaintiff interprets the phrase "with moderate limitations" as modifying both elements of that statement, i.e., relating to others and dealing with stress. [11], p. 2.  The Commissioner, however, interprets the phrase as applying only to the second part - dealing with stress. [10-1], p. 19.  This appears to have been the ALJ's interpretation as well, as she accounted for the moderate limitations on stress by recommending only "low-stress" jobs, but did not make any accommodation for a limitation in relating to others. [6], p. 42.

My reading of Dr. Ippolito's statement in context tends to support the Commissioner's view, as it also states that plaintiff was "able to follow and understand simple direction and instructions . . .  maintain attention and concentration . . .  and make appropriate decisions with no evidence of limitations". Id., p. 337.  In any event, it is not for the court to second guess the ALJ's rational interpretation of the evidence. See Samantha S. v. Commissioner of Social Security, 385 F. Supp. 3d 174, 180 (N.D.N.Y. 2019) ("where evidence is deemed susceptible to more than one rational interpretation, [the] Commissioner's decision must be upheld - even if the court's independent review of the evidence may differ from the Commissioner").

**C.  Did the Appeals Council Improperly Reject a Treating Source Medical Opinion?**

The plaintiff's further argument regarding the Appeals Council's treatment of the opinion generated by Dr. Singh subsequent to the hearing is rendered moot because this matter is remanded for further consideration, which will necessarily encompass due consideration of this treating source document. See, e.g., Borsching v. Colvin, 102 F.Supp.3d 458, 463 (W.D.N.Y.

2015) ("[t]he treating physician rule applies with equal force to . . . consideration of new and material evidence").

<strong>CONCLUSION</strong>

For the reasons stated above, plaintiff's motion for judgment on the pleadings [8] is granted to the extent that this matter is remanded to the Commissioner for further proceedings consistent with this Decision and Order, and is otherwise denied. Accordingly, the Commissioner's motion for judgment on the pleadings [10] is also denied.

**SO ORDERED**.

Dated: March 8, 2021

/s/ Jeremiah J. McCarthy
JEREMIAH J. McCARTHY
United States Magistrate Judge